Mr. Charles L. Robinson, CPA, CFE Legislative Auditor 172 State Capitol Little Rock, AR 72201-1099
Dear Mr. Robinson:
You have requested an opinion on the following questions:
 1. Did the Pankey Community Improvement Association violate the provisions of Act 804 of 1999 or other Arkansas laws by contracting for the construction of the Josephine Pankey Education Center without having secured adequate funding to complete the project?
 2. If the answer to question #1 is `Yes,' what remedies are available to the Department of Finance and Administration or other public entities concerning the violation of Arkansas law?
RESPONSE
The answer to your first question is "no," in my opinion. A response to your second question is therefore unnecessary.
Act 804 of 1999 appropriated $750,000.000 to the Department of Finance and Administration Disbursing Officer "[f]or construction and improvements for the Pankey Community Center,]" to be payable from the General Improvement Fund. Acts 1999, No. 804, § 1. The funded amount for the "Pankey Community Ctr" under the General Improvement Distribution Act of 1999 was $475,000.00. Acts 1999, No. 1405, § 3 (b) and (c) (allocating a maximum of $225,000.00 under "Legislative Division" projects and $250,000.00 under "Executive Division," respectively.)
It appears from the information you have supplied that this $475,000.00 was disbursed by the Department of Finance and Administration ("DFA") to the Pankey Community Improvement Association ("Association"), a private, nonprofit entity. You have included with your request certain background information and documentation pertaining to the Association and its efforts to construct an educational and community center on lands deeded to it by the Little Rock School District. According to the material you have supplied, the Association entered into a contract with a private contractor for the construction of the "Josephine Pankey Community Education Center" for $675,000.00. The $475,000.00 in State General Improvement Funds was expended for building construction under this contract.[1]
Your questions arise from the fact that the Association's construction contract exceeded the $475,000.00 that was made available from the General Improvement Fund for the "Pankey Community Ctr." Acts1999, No. 1405, supra. You have expressed your belief that this was in conflict with the following language contained in Act 804 of 1999, the appropriation act:
 DISBURSEMENT CONTROLS. (A) No contract may be awarded nor obligation otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefor as provided by law. Provided, however, that institutions and agencies listed herein shall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing the State Treasury funds for financing the entire costs of the project or projects enumerated herein. Provided further, that the appropriations and funds otherwise provided by the General Assembly for Maintenance and General Operations of the agency or institutions receiving appropriations herein shall not be used for any of the purposes as appropriated in this act.
Acts 1999, No. 804, § 2 (A) (emphasis added).
The language emphasized above would at first blush seem to proscribeany contract relating to the Pankey Community Center that exceeds the $475,000.00 allotted under the General Improvement Distribution Act. It is my opinion upon further review, however, that this proscription in the appropriation act does not constrain contracts or obligations of the Association. As indicated by its title, this section of the appropriation imposes "disbursement controls." It applies to the disbursement of funds from DFA. This follows from the fact that the act appropriates funds to the DFA disbursing officer for the named construction and improvements ("the Pankey Community Center.") When the above-emphasized language is viewed in this light, its purpose is illuminated and it becomes clear that this proscription invokes the state's budgeting and financial management system embodied in the General Accounting and Budgetary Procedures Law (A.C.A. §§ 19-4-101—2105). The "purpose" section of this law states that "[i]t is the policy of the State of Arkansas to . . . [m]aintain on a sound financial basis the state and all of its agencies, boards, commissions, departments, and institutions, all referred to in this chapter as `agencies' unless otherwise necessary." A.C.A. § 19-4-102
(Repl. 1998.) DFA, through its Director (the Chief Fiscal Officer of the State), has the power and duty to implement this policy. See A.C.A. § 19-4-104 (Repl. 1998) (Chief Fiscal Officer's rulemaking authority.) Consistent with this charge, all state construction projects are subject to rules and regulations promulgated by the Chief Fiscal Officer. A.C.A. § 19-4-524 (a) (3) (Supp. 2003). Also of note is the following language found in the latter subsection:
 No state agency for which appropriations have been made by the General Assembly for construction or improvements shall make any contract or incur any indebtedness payable from such appropriations unless and until there are sufficient funds on hand, for the benefit of any agency, to pay for the proposed obligations under such contracts. However, any such agency shall have the power to accept and use grants and donations and to use its unobligated cash income or other funds available to it for the purpose of supplementing the appropriations for construction purposes.
Id.
As you can see, this language is very similar to the appropriation language in question. Virtually identical language is also found under another provision in the Accounting and Budgetary Procedures law. Arkansas Code Annotated § 19-4-1409 states:
 No state agency for which appropriations have been made by the General Assembly for construction and improvements shall make any contract or incur any indebtedness payable from those appropriations unless and until there are sufficient funds on hand or, in the case of federal grants, until the grant has received final approval from the granting federal agency for the benefit of the state agency to pay for the proposed obligations under the contracts. However, any agency shall have the power to accept and use grants and donations and to use its unobligated cash income and other funds available to it for the purpose of supplementing appropriations for construction purposes.
A.C.A. § 19-4-1409 (a) (Repl. 1998).
It is my opinion that the appropriation language in question is intended to echo these fiscal control provisions which apply to construction and improvements by state agencies. DFA's budget control with regard to contracts or indebtedness in connection with state agency projects is clear, as noted above. On the other hand, its financial management powers ordinarily do not extend to private contracts or other obligations incurred by private entities. Nor, in my opinion, can such authority reasonably be inferred from the wording of the "disbursement controls" section of the appropriation act in this instance. As an initial matter, the term "awarded," as used in reference to contracts, arguably connotes a state contract. Acts 1999, No. 804, § 2, supra. The ensuing provisos must then be considered. The authorization for "institutions and agencies" to "accept and use grants and donations . . . and . . . unobligated cash income or funds" to supplement the state funds clearly extends to state agencies. The same is true of the following limitation with respect to appropriations and funds for "Maintenance and General Operations of the agency or institutions. . . ." These provisos undoubtedly only apply to state agencies and institutions. The proscription regarding contracts and obligations consequently must also apply to such entities. To conclude otherwise would lead to absurd results. A private entity would be prohibited from contracting or obligating itself in excess of the available state funds, with no opportunity to use other resources to finance the "entire cost of the project," as is authorized for state agencies. The appropriation must be interpreted in such a way as to avoid this absurdity. See generallyFountain v. State, 348 Ark. 359, 72 S.W.3d 511 (2002); Yarbrough v.Witty, 336 Ark. 479, 987 S.W.2d 257 (1999).
In conclusion, therefore, it is my opinion that the proscription in Section 2 of Act 804 of 1999 applies to state agency contracts or obligations, consistent with the General Accounting and Budgetary Procedures Law. It does not apply to the Association's contracts or obligations, in my opinion. Nor am I aware of any general state law that would prohibit a private entity from entering into a contract for a project or otherwise incurring obligations in excess of state funds available for the project. If it is desirable to impose a prohibition or limitation of this nature, this is a matter to be addressed by the General Assembly either through individual appropriation acts or a blanket state law requirement to this effect.
My negative response to your first question renders your second question moot.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The disbursement and use of the funds for this purpose appears consistent with the appropriation act and the constitutional requirement that "[n]o money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation. Ark. Const. art. 16, § 12. See also Ark. Const. art. 5, §29 ("No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill. . . .")